SHIRLEY *v.* THE DRACKETT PRODUCTS COMPANY

1. PRODUCTS LIABILITY—SALES—LIABILITY OF DISTRIBUTOR—DEFEC-
TIVE MANUFACTURE.

   A vendor who distributes a product acquired in the open market
   generally is not liable for its negligent manufacture.

2. PRODUCTS LIABILITY—CORPORATIONS—LIABILITY OF DISTRIBUTOR—
SEPARATE CORPORATE IDENTITY.

   The distinct corporate identity of a distributor will be ignored
   for the purpose of determining liability for the negligent
   manufacture of a product where the distributor is so organized
   and so controlled as to make it a mere instrumentality or an
   agent of the manufacturer of the product; in such circum-
   stances, the two corporations will be regarded as one unit.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 46 Am Jur, Sales § 805.
  Liability of manufacturer or seller for injury caused by domestic
  or industrial soaps, detergents, cleansers, polishes and the like.
  79 ALR2d 482.
[2, 3] 18 Am Jur 2d, Corporations § 17.
  19 Am Jur 2d, Corporations § 717.
  Liability of manufacturer or seller for injury caused by domestic
  or industrial soaps, detergents, cleansers, polishes and the like.
  79 ALR2d 482.
  Liability of corporation for torts of subsidiary. 7 ALR3d 1343.
[4] 30 Am Jur 2d, Evidence §§ 265, 1120.
[5] 30 Am Jur 2d, Evidence § 1121.
[6–8] 31 Am Jur 2d, Expert and Opinion Evidence § 105 *et seq.*
  Admissibility of opinion evidence as to cause of death, disease
  or injury. 66 ALR2d 1082.
[7, 8] 31 Am Jur 2d, Expert and Opinion Evidence § 36 *et seq.*
[9] 53 Am Jur, Trial § 893 *et seq.*
[10] 22 Am Jur 2d, Damages § 366 *et seq.*
  Excessiveness or adequacy of damages awarded to injured person
  for injuries to organic systems and processes of body. 12
  ALR3d 475.

3. PRODUCTS LIABILITY—CORPORATIONS—LIABILITY OF DISTRIBUTOR—
DEFECTIVE MANUFACTURE.

> The separate corporate identity of the distributor of a toilet
> bowl cleanser was ignored and the manufacturer of the
> cleanser and the distributor were treated as one unit for the
> purpose of determining liability for the negligent manufacture
> of the product where the distributor was a wholly-owned
> subsidiary of the manufacturer, interchanged employees with
> the manufacturer, had its principal offices at the same address
> as the manufacturer's offices, had a similar name to the
> manufacturer's, was the exclusive distributor of the manu-
> facturer's products, existed solely as the distributor of the
> manufacturer's products, and where the two corporations had
> interlocking officers and directors.

4. NEGLIGENCE—CIRCUMSTANTIAL EVIDENCE—PRIMA FACIE CASE.

> Negligence may be established by circumstantial evidence and
> where the circumstances are such as to take the case out of
> the realm of conjecture and to bring the case within the
> field of legitimate inference from established facts, at least,
> a *prima facie* case is made.

5. PRODUCTS LIABILITY—PROXIMATE CAUSE—EVIDENCE.

> The plaintiff presented sufficient evidence to support a judgment
> that her injuries were proximately caused by using. a toilet
> bowl cleanser where her attending physician testified that the
> plaintiff was in good health before using the cleanser, that
> her injuries were caused by an irritant, not an infection, and
> that the irritant came from the cleanser, even though he
> could not identify the precise irritant, and where an expert
> witness testified that hydrogen chloride gas and chlorine gas
> were irritants and productive of harmful effects and that both
> gases could be released when the cleanser was used.

6. WITNESSES—EXPERT WITNESS—MEDICAL WITNESS.

> A doctor is an expert on health and in this capacity is competent
> to draw conclusions concerning a party's physical condition.

7. WITNESSES—EXPERT WITNESS—MEDICAL WITNESS—HYPOTHETI-
CAL QUESTION.

> The plaintiff's medical witness was competent to state, in re-
> sponse to a hypothetical question, that he believed that the
> plaintiff's injuries were caused by an irritant in the defend-
> ant's toilet bowl cleanser, even though he could not identify
> the precise irritant, where the doctor was the plaintiff's
> attending physician and where he testified that the plaintiff

had been in good health prior to using the cleanser, that the plaintiff, after using the cleanser had acute bronchitis and bronchial asthma, and that the plaintiff's condition was caused by an irritant, not an infection.

8. Witnesses—Expert Witness—Opinion Testimony.

An expert witness may state his opinion and his reasons for the opinion without first specifying the data on which the opinion is based; the burden of attacking the basis of the expert witness's opinion shifts to the counsel who cross-examines (GCR 1963, 605).

9. Jury—Misconduct.

Several jurors' shaking hands with the plaintiff after the jury had returned its verdict for the plaintiff did not constitute jury misconduct where the defendant failed to show any misconduct during the trial and where the defendant failed to point out any prejudice.

10. Damages—Excessive Verdict—Injuries.

A verdict of $100,000 was not excessive where the evidence showed that, as a result of her use of the defendant's toilet bowl cleanser, the plaintiff spent 122 days in the hospital during the seven years between her inhalation of the cleanser and the beginning of the trial, developed emphysema and cardiac trouble, was still under medication at the time of the trial, and was unable to engage in many of the physical activities she was formerly capable of performing.

Appeal from Isabella, Robert H. Campbell, J. Submitted Division 3 April 10, 1970, at Grand Rapids. (Docket No. 7,349.) Decided September 30, 1970. Leave to appeal denied December 8, 1970. 384 Mich 788.

Complaint by Julia Shirley against The Drackett Products Company for injuries resulting from use of a toilet bowl cleanser. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Lynch, Gallagher, Lynch & Kerr,* for plaintiff.

*Foster, Lindemer, Swift & Collins,* for defendant.

Before: HOLBROOK, P. J., and BRONSON and E. W. BROWN,* JJ.

E. W. BROWN, J.    This is a products liability case in which the plaintiff claimed that upon using a toilet bowl cleanser called "Vanish" she suffered severe and permanent respiratory injuries from the inhalation of harmful fumes. The complaint alleges negligence and breach of warranty. The jury returned a verdict in favor of the plaintiff in the amount of $100,000.

On December 12, 1961, plaintiff, a reasonably healthy 56-year-old woman, prompted by advertising, purchased a can of Vanish from a local store. At approximately 11 o'clock that night she decided to clean the toilet bowl in her apartment. In accordance with the directions on the can she sprinkled Vanish into the bowl and vigorously scrubbed the interior of the bowl with a short-handled brush. In doing so, her face was about 12 inches from the top of the bowl. She started choking and coughing and couldn't catch her breath. She then left the bathroom and went outside on the porch to breathe some fresh air. Her son, who had been upstairs in his room, came down and found his mother coughing, choking and quite weak. The son took his mother to the hospital where she was placed in oxygen and treated with adrenalin and ACTH. Dr. Wood, who treated her, testified that her breathing was rapid and labored, with wheezing which was audible several feet away. His diagnosis was that she was suffering from a combination of acute bronchitis and bronchial asthma. Plaintiff claims that she has been and will continue to be permanently disabled as a result of this incident. The medical testimony tends to support this contention.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

On appeal defendant seeks reversal alleging eight errors which can be summarized as follows: (1.) the complaint is against the wrong corporate entity; (2.) the trial court committed error in denying motions for a directed verdict and a judgment notwithstanding the verdict; (3.) the verdict is against the great weight of the evidence; (4.) the plaintiff's medical witness did not qualify as an expert and hypothetical questions to him were improper and his answers to those questions were inadmissible; (5.) the plaintiff's attempt to introduce a letter regarding an unrelated claim was prejudicial; (6.) there was jury misconduct; (7.) the verdict was excessive; and (8.) the court failed to give requested instructions and gave other instructions that were misleading and confusing.

The first question raised by this appeal is whether or not the trial court erred in holding as a matter of law that defendant, as the distributor, was chargeable with the manufacturer's negligence, the two being separate corporate entities. As a general rule, a vendor who distributes a product acquired in the open market is not liable for its negligent manufacture. *Clement* v. *Rommeck* (1907), 149 Mich 595; *Pesavento* v. *E. I. DuPont de Nemours & Co.* (1927), 240 Mich 434; *Camden Fire Insurance Co.* v. *Peterman* (1937), 278 Mich 615. However, that rule is not applicable in view of the facts in this case.

Vanish is manufactured by The Drackett Company. The defendant bore the corporate name "The Drackett Products Company" and was a wholly-owned subsidiary and the exclusive distributor of all of the manufacturer's products. The parent and subsidiary had their principal offices at the same address in Cincinnati, Ohio. There were interlocking officers and directors and there was some inter-

change of employees. The subsidiary (the defendant) existed solely as the distributing arm of the manufacturer and the manufacturer's only source of revenue was from the sales of its subsidiary. Where a corporation is so organized and so controlled as to make it a mere instrumentality or an agent of another corporation, its separate existence as a distinct corporate entity will be ignored and the two corporations will be regarded in legal contemplation as one unit. These facts must be held to deny this defendant the insulation from liability that ordinarily protects a retailer or distributor. *Bathory* v. *Procter & Gamble Distributing Company* (CA 6, 1962), 306 F2d 22. The trial court's ruling that the facts warranted piercing the corporate veil was sustained by the evidence. *Swearngin* v. *Sears Roebuck & Company* (CA 10, 1967), 376 F2d 637.

Defendant's principal contention at the trial and on appeal is that there was no competent evidence from which the jury could find, or reasonably infer, that the product Vanish was the cause of the respiratory condition complained of and because of this lack of competent evidence the trial court erred in denying defendant's motions for a directed verdict and for entry of a judgment notwithstanding the verdict. In this connection, the defendant further argues that the verdict of the jury was against the great weight of the evidence and warrants a new trial. Generally, the mere occurrence of an injury is not alone evidence of negligence. But, of course, negligence may be established by circumstantial evidence and where the circumstances are such as to take the case out of the realm of conjecture and to bring the case within the field of legitimate inference from established facts, at least a *prima facie*

case is made. *Gadde* v. *Michigan Consolidated Gas Company* (1966), 377 Mich 117.

Dr. Wood, the plaintiff's attending physician, testified that in his opinion the plaintiff's physical condition was not due to infection but was caused by an irritant and that one must assume that there was a direct relationship between the plaintiff's symptoms that were produced when she used the cleanser and the use of the cleanser. Approximately two years after the incident, Dr. Filson, a professor of chemistry at Central Michigan University, chemically analyzed the contents of the actual can of Vanish used by the plaintiff. He testified that both hydrogen chloride gas and chlorine gas could be released when Vanish is used because Vanish contains sodium bisulfate and a chloride ion which would react together and with iron oxide (in the rust of the toilet bowl) since iron oxide is both an oxidizing agent and a catalyst. This witness further testified that these gases are irritants and would produce harmful effects.

To be sure, the defendant offered testimony contradicting the testimony offered by the plaintiff's witnesses but as the trial court noted: "It is not for the court to tell the jury whose testimony is reliable or which testimony is more reliable". Conflicting evidence is, of course, a matter for the jury to determine. The record in the instant case contained sufficient evidence, both direct and circumstantial, to support the plaintiff's position. As the court said in *Bathory, supra:*

"We think that the total of this evidence and the justifiable inferences that could be drawn therefrom were adequate to permit a finding that Pin-It was the proximate cause of plaintiff's trouble. We believe that the facts in this case lead with equal facility and logical sequence to a justified conclu-

sion that the injury was proximately caused by the product as did the facts found sufficient for such purpose in the case of *Gerkin* v. *Brown & Sehler Co.* (1913), 177 Mich 45, 53, 54, 143 NW 48, 48 LRA NS 224."

Decision in this case finds ample support in *Bronson* v. *J. L. Hudson Company* (1965), 376 Mich 98. In *Bronson,* Mrs. Berke purchased a cotton slip, wore it without washing it, and the same day that she wore it suffered severe dermatitis. The plaintiff was not required to prove a defective product, breach of warranty, knowledge, or causal connection. There was no requirement that the particular irritant be identified. Comparison of that case with the instant case indicates great similarity. Mrs. Berke, in *Bronson,* wore the slip; Mrs. Shirley used Vanish; Mrs. Berke had an immediate skin reaction; Mrs. Shirley started choking and coughing; in both cases there was no provable misuse of the product. The Court in *Bronson* said, pp 102, 103:

"Upon such proofs, the reasonable mind could legitimately infer that the one new element in Mrs. Berke's life at that time, the new slip, was directly linked with her injury."

The same can be said of the plaintiff's use of Vanish in the present case.

Defendant's contention that the plaintiff's physician, Dr. Wood, was not qualified to answer a hypothetical question is unimpressive. Certainly his educational credentials were sufficient. He diagnosed the plaintiff's condition as not being caused by infection but by an irritant. He testified that the plaintiff had acute bronchitis and bronchial asthma. Based on the history of the events of the evening in question, the doctor could only reasonably assume and testify in answer to the hypothet-

ical question that it was his opinion that the irritant came from the product used in the toilet bowl, since the plaintiff's health previous to the incident had been good. The defendant apparently believes that to be qualified as an expert the doctor should be an expert on the ingredients of a can of Vanish, the exact irritant, and the reactions of chlorine gas. The doctor is an expert on health and in this capacity was competent to draw conclusions concerning plaintiff's physical condition. The fact that he could not identify the precise irritant in Vanish is not important. *Bronson* v. *J. L. Hudson Company, supra.* There the medical testimony was that a garment containing an irritant, unidentified, could cause dermatitis.

The defendant's objections to the form of the questions asked of the plaintiff's expert witnesses on direct examination are, likewise, without merit. On the whole the questions propounded were fair and the jury was adequately instructed concerning hypothetical questions. Moreover, under GCR 1963, 605, the expert witness "may state his opinion and reasons therefor without first specifying data on which it is based." As pointed out in 3 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 386, the burden of attacking the basis of an expert witness's opinion shifts to the counsel who cross-examines. *Lake Oakland Heights Park Association* v. *Township of Waterford* (1967), 6 Mich App 29. A further objection is raised concerning the plaintiff's attempt to introduce a letter, written in 1967, from the attorney of a Vanish user complaining about the product. The plaintiff desired to use the letter to impeach the credibility of the defendant's senior research chemist who had testified about his knowledge of complaints. Defendant's objection to the exhibit was sustained and

the matter was dropped. Even assuming the impropriety of such cross-examination, there is no showing of prejudice to the defendant. The exhibit was not received in evidence, no instruction was asked for by the defendant, and the court advised the jury not to consider evidence not admitted. We agree with the trial court that this did not constitute prejudicial error sufficient to warrant reversal.

After the jury's verdict, the defendant complains that some of the jurors shook hands with the plaintiff and one embraced her. It is contended that this is jury misconduct and a ground for setting aside the verdict. The defendant cites *Cooper* v. *Carr* (1910), 161 Mich 405 which holds that a verdict should be set aside whenever the misconduct of the jury can be reasonably supposed to have affected the course of the trial. The case is clearly distinguishable. In the *Cooper* case, statements were made outside of the jury room indicating a fixed opinion of a juror during the course of the trial. Here the jury had returned its verdict and was discharged. The defendant fails to show any prejudice or point out any trial misconduct. The trial court's ruling finds support in *Hoskin-Morainville Paper Co.* v. *Bates Valve Bag Corp.* (1934), 268 Mich 443; *Kwaiser* v. *Peters* (1968), 381 Mich 73.

The next issue concerns the $100,000 verdict. The defendant contends it is excessive in the context of the trial due to passion, bias, and prejudice. We agree that the verdict is high but we cannot say that it shocks the judicial conscience. *Watrous* v. *Conor* (1934), 266 Mich 397. Courts are reluctant to disturb verdicts of juries in personal injury cases on the ground that the amount is excessive. *Cawood* v. *Earl Paige & Co.* (1927), 239 Mich 485; *Stevens* v. *Edward C. Levy Company* (1965), 376 Mich 1. Plaintiff is unquestionably in poor physical con-

dition. From December 12, 1961, to the time of trial in October 1968, her condition deteriorated steadily. During that period she spent some 122 days in the hospital in connection with her respiratory troubles. She has emphysema and cardiac trouble, is still under medication, and unable to engage in many of the physical activities she was formerly capable of performing. We are constrained to agree with the trial court that the evidence of past, continuing, and future distress is sufficient to support the verdict rendered.

Finally, defendant objects to the trial court's instructions to the jury. The instructions indicate reliance upon *Bronson* v. *J. L. Hudson Company, supra,* but in view of existing precedent they adequately and reasonably stated the law and the theories of the parties. No sufficient ground is found concerning instructions to compel this Court's intervention or reversal.

Affirmed. Costs to plaintiff.

All concurred.