Richard **KENNEDY** and Kaye Kennedy, Appellants–Plaintiffs,

v.

**GUESS, INC., Callanen International, Inc., Interasian Resources, Ltd., and Interasia Bag Manufacturers, Ltd.,** Appellees–Defendants.

No. 29A02–0110–CV–674.

Court of Appeals of Indiana.

March 28, 2002.

Frederick R. Hovde, Hovde Law Firm, Indianapolis, Indiana, Attorney for Appellants.

Jeffrey R. Mitchell, Yarling & Robinson, Indianapolis, Indiana, Attorney for Appellees.

## OPINION

BAILEY, Judge.

### Case Summary

Richard Kennedy and Kaye Kennedy (hereinafter "Richard" and "Kaye," collectively "the Kennedys") appeal a grant of summary judgment in favor of Guess, Inc. ("Guess") and Callanen Intern. formerly known as Watches CGI, Inc. ("Callanen") in the Kennedys' products liability and negligence action against Guess,

Callanen, Interasian Resources, Ltd. ("Interasian Resources") and Interasia Bag Manufacturers, Ltd. ("Interasia Bag"). We reverse.

### Issues

The Kennedys present two issues, which we restate as follows:

I. Whether the trial court properly granted summary judgment to Callanen and Guess on the strict product liability claim; and

II. Whether the trial court properly granted summary judgment to Callanen and Guess on the negligence claim.

### Facts and Procedural History

On November 22, 1996, Kaye purchased a watch at a Lazarus Department Store in Indianapolis, Indiana. She received an umbrella as a free gift with the watch purchase. Both the watch and the umbrella bore a "Guess" logo.

On May 22, 1998, Richard took the umbrella to his place of employment. One of his co-workers began to swing the umbrella. The shaft separated from the handle, flew through the air and struck Richard in the nose and sinus, causing injury.

On May 26, 1999, the Kennedys filed an Amended Complaint for Damages including negligence and strict liability claims against Guess, Callanen, Interasia Bag and Interasian Resources. Callanen, a Connecticut corporation, possesses the right to market products bearing the Guess name under the terms of a licensing agreement with Guess, a California corporation. Interasia Bag, a Hong Kong corporation, apparently manufactured the Kennedys' umbrella. Interasian Resources, located in New York, apparently is a domestic affiliate of Interasia Bag.

On August 3, 1999, Callanen and Guess filed a cross-claim against Interasia Bag and Interasian Resources. On May 4, 2001, the Kennedys attempted to serve an Amended Complaint for Damages and Summons upon Interasia Bag in Hong Kong, at the address provided by Interasian Resources to Callanen. The documents were returned with an affirmation of nonservice indicating that Interasia Bag was not located at the designated address.

On June 8, 2001, Callanen and Guess moved for summary judgment in their favor. On August 16, 2001, a hearing was held. On September 5, 2001, the trial court entered "Findings of Fact, Conclusions of Law and Summary Judgment" granting summary judgment to Callanen and Guess. The Kennedys now appeal.

### Discussion and Decision

#### I. Standard of Review— Summary Judgment

Pursuant to Rule 56(C) of the Indiana Rules of Trial Procedure, summary judgment is appropriate when there are no genuine issues of material fact and when the moving party is entitled to judgment as a matter of law. A party seeking summary judgment bears the burden of showing the absence of a factual issue and his entitlement to judgment as a matter of law. *Colen v. Pride Vending Service,* 654 N.E.2d 1159, 1162 (Ind.Ct.App.1995). Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Peterson v. First State Bank,* 737 N.E.2d 1226, 1230 (Ind.Ct.App.2000), *reh'g. denied.*

At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice and any other matters on which it relies for purposes of the motion. T.R. 56(C). We employ the

same standard used by the trial court when reviewing the grant or denial of summary judgment. *Crossno v. State,* 726 N.E.2d 375, 378 (Ind.Ct.App.2000). We must determine whether there is a genuine issue of material fact requiring trial, and whether the moving party is entitled to judgment as a matter of law. *Best Homes, Inc. v. Rainwater,* 714 N.E.2d 702, 705 (Ind.Ct.App.1999). Neither the trial court nor the reviewing court may look beyond the evidence specifically designated to the trial court. *Id.* We do not weigh the evidence but will consider the facts in the light most favorable to the nonmoving party. *Peterson,* 737 N.E.2d at 1230. We may sustain a summary judgment upon any theory supported by the designated materials. *Id.* However, we will reverse the trial court if we determine that the trial court misapplied the law. *Id.*

■ A presumption of validity clothes a trial court's grant of summary judgment, and the appellant has the burden of demonstrating to this Court that the trial court's grant of summary judgment was erroneous. *Bunch v. Tiwari,* 711 N.E.2d 844, 848 (Ind.Ct.App.1999).

■ Here, the judgment on review is designated as "Findings of Fact, Conclusions of Law and Summary Judgment." (Appendix 7.) Findings of fact are inappropriate when summary judgment is entered. *Butler v. City of Indianapolis,* 668 N.E.2d 1227, 1228 (Ind.1996). The entry of specific findings and conclusions does not alter the nature of a summary judgment, which is a judgment entered when there are no genuine issues of material fact to be resolved. *Peterson,* 737 N.E.2d at 1231. We are not bound by the trial court's findings and conclusions, · which merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.*

## II.  Strict Product Liability Claim

Products liability actions in Indiana are governed by the Indiana Products Liability Act ("the Act"), Indiana Code section 34–20–2–1, et. seq. The Act provides in pertinent part:

> a person who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer or to the user's or consumer's property is subject to liability for physical harm caused by that product to the user or consumer if:
>
> (1) that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition;
>
> (2) the seller is engaged in the business of selling the product; and
>
> (3) the product is expected to and does reach the user or consumer without substantial alteration in the condition in which the product is sold by the person sought to be held liable under this article.

IND.CODE § 34–20–2–1.

In an effort to establish their strict product liability claim, the Kennedys alleged that the umbrella was unreasonably dangerous and defective in that "the design, manufacture and assembly of the umbrella resulted in the shaft of the umbrella separating from the handle during foreseeable use." (Appendix 23.) In support of their motion for summary judgment, Callanen and Guess denied that either entity manufactured the umbrella.

The Indiana Products Liability Act ("the Act") generally restricts the imposition of strict product liability to the manufacturer, as follows:

> A product liability action based on the doctrine of strict liability in tort may not

be commenced or maintained against a seller of a product that is alleged to contain or possess a defective condition unreasonably dangerous to the user or consumer unless the seller is a manufacturer of the product or of the part of the product alleged to be defective.

IND.CODE § 34–20–2–3.

■ Indiana Code section 34–6–2–77(a) defines a manufacturer, for purposes of IC 34–20, as "a person or an entity who designs, assembles, fabricates, produces, constructs, or otherwise prepares a product or a component part of a product before the sale of the product to a user or consumer." Pursuant to subsection (b), a seller who discloses the name of the actual manufacturer of a product is not a manufacturer merely because the seller places or has placed a private label on a product. However, "manufacturer" includes a seller who:

(1) has actual knowledge of a defect in a product;

(2) creates and furnishes a manufacturer with specifications relevant to the alleged defect for producing the product or who otherwise exercises some significant control over all or a portion of the manufacturing process;

(3) alters or modifies the product in any significant manner after the product comes into the seller's possession and before it is sold to the ultimate user or consumer;

(4) is owned in whole or significant part by the manufacturer; or

(5) owns in whole or significant part the manufacturer.

IND.CODE § 34–6–2–77(a). The Kennedys have not alleged that either Guess or Callanen meet the foregoing statutory definition of a manufacturer. However, although the Act generally does not permit strict liability claims against nonmanufac-turing sellers of a product, the Kennedys have alleged that Guess and Callanen each may be deemed a manufacturer pursuant to Indiana Code section 34–20–2–4, which provides in pertinent part:

If a court is unable to hold jurisdiction over a particular manufacturer of a product or part of a product alleged to be defective, then that manufacturer's principal distributor or seller over whom a court may hold jurisdiction shall be considered, for the purposes of this chapter, the manufacturer of the product.

Accordingly, a plaintiff may recover from a seller under a theory of strict liability where two conditions are met: (1) the court is unable to hold jurisdiction over the actual manufacturer of the allegedly defective product; and (2) the defendant is the manufacturer's principal distributor or seller over whom a court may hold jurisdiction.

The parties have not disputed the role of Interasia Bag as the actual manufacturer of the umbrella, but have contested whether the conditions under which Callanen and Guess could be deemed to be the manufacturer have been satisfied. Callanen and Guess argued that the burden of demonstrating a lack of jurisdiction over Interasia Bag is upon the Kennedys, and that the lack of service of process on Interasia Bag resulted from the Kennedys' less than diligent efforts. They further contended that neither of them is a "principal distributor or seller" of Interasia Bag products. The designated materials include affidavits by employees of Callanen and Guess that neither entity is a "principal distributor or seller" for Interasia Bag or Interasian Resources. (Appendix 39, 42.) The Kennedys, in their designation of material issues of fact, claimed that Interasia Bag is "no longer in business ... leaving Guess and Callanen as principal

distributor or seller." (Appendix 66.) However, the Kennedys designated no evidence tending to show that either Callanen or Guess is a "principal distributor or seller" for Interasia Bag, the actual manufacturer.

■■ The trial court found it unnecessary to reach the issue of whether or not it lacked jurisdiction over Interasia Bag, stating in pertinent part:

> Even if the Court could not obtain jurisdiction over Interasia Manufacturing, the record suggests that the "principal distributor or seller over whom [this] court" might hold jurisdiction would not be Callanen or Guess but rather Interasian Resources, which took the order on behalf of Interasia Manufacturing from Callanen—one of the roles of a distributor—and which maintains an office in New York City, and is therefore just as likely to be amenable to this Court's jurisdiction as Callanen and Guess, which have offices in Norwalk, Connecticut and Beverly Hills, California, respectively. (Affidavit of Floy Wakuya, ¶ 9; Affidavit of R. Damavandi, ¶ 4.)

(Appendix 18.) As the trial court observes, Indiana Code section 34–20–2–4 enunciates two requirements to be satisfied for the nonmanufacturer exception to apply, and thus it is sufficient if the defendants have negated one condition, specifically, the defendant's identity as the "principal distributor or seller." If so, the trial court need not also have determined whether it could hold jurisdiction over Interasia Bag. Thus, summary judgment may be sustained on behalf of the defendants if the defendants met their burden of demonstrating that undisputed facts disclose neither is the principal seller or distributor. A genuine issue of material fact exists when facts concerning an issue that would dispose of the litigation are in dispute or when the undisputed facts are able to support conflicting inferences on such an issue. *Miles v. Christensen,* 724 N.E.2d 643, 645 (Ind.Ct.App.2000), *trans. denied.*

■■ For purposes of Indiana Code Chapter 34–20, a "seller" is "a person engaged in the business of selling or leasing a product for resale, use, or consumption." IND.CODE § 34–6–2–137. There is no corollary definition of "distributor," nor does the Act define "principal." However, the cardinal rule of statutory construction is to determine and give effect to the true intent of the legislature. *T.W. Thom Constr., Inc. v. City of Jeffersonville,* 721 N.E.2d 319, 324 (Ind.Ct.App.1999). Absent a clearly manifested purpose to do otherwise, words used in a statute are to be given their ordinary and plain meaning. *Id.* "Principal" is defined in BLACK'S LAW DICTIONARY (Fifth Edition) as "Chief"; leading; most important or considerable; primary; original. A "Distributor" is defined as "any individual, partnership, corporation, association, or other legal relationship which stands between the manufacturer and the retail seller in purchases, consignments, or contracts for sale of consumer goods; a wholesaler."

■ Employees of Callanen and Guess have averred, in conclusory terms, that neither entity is the "principal distributor or seller" for Interasian Bag. Nevertheless, there is an absence of designated factual information from which the trial court, or this Court, could determine the identity of the principal seller or distributor for Interasia Bag. The Kennedys were obliged to designate materials to demonstrate the existence of a genuine issue of material fact only if the defendants designated sufficient materials in support of their motion for summary judgment to demonstrate the lack of a material issue of fact on a material element of the Kennedy's claim. *See Lenhardt Tool &*

*Die Co., Inc. v. Lumpe,* 703 N.E.2d 1079, 1084 (Ind.Ct.App.1998), *trans. denied* (observing that federal practice and state practice contrast with respect to summary judgment motions, and a state court defendant could not prevail on a summary judgment motion merely by showing that the plaintiff lacked sufficient proof to establish an essential element of his claim). "Lenhardt would have had to designate some evidence that the mold was not manufactured by Lenhardt in order to require Lumpe to come forward with evidence that the mold was manufactured by Lenhardt. Simply demonstrating that Lumpe does not have sufficient evidence to prove the mold was manufactured by Lenhardt is not enough." *Id.* at 1083.

Here, the trial court recognized the "suggestion" in the record that Interasian Resources (rather than Callanen or Guess) is the primary distributor for Interasia Bag. Nevertheless, there are no designated facts to establish this possibility. Neither are there designated facts to establish that Callanen, Guess, or any other entity is the identifiable principal distributor or seller over whom the trial court may exercise jurisdiction.

Indiana Code section 34–20–2–3 generally restricts the imposition of strict product liability to a manufacturer, and only if Callanen or Guess can be deemed to be the primary distributor or seller for Interasia Bag can either of them be defined as a manufacturer pursuant to the statutory exception embodied in Indiana Code section 34–20–2–4. This determination necessarily must rest upon some showing that the entity in question is or is not, on behalf of Interasia Bag, the leading seller or intermediary between seller and manufacturer. As there exists a material issue of fact requiring resolution, the grant of summary judgment as to the strict product liability claim was contrary to law.

### III. Negligence Claim

The Kennedys also brought a product negligence claim, alleging that the defendants were "negligent in the design, manufacture, assembly and testing of the umbrella." (Appendix 23.) The Indiana Product Liability Act did not change general product negligence law. *Koske v. Townsend Engineering Co.,* 551 N.E.2d 437, 443 (Ind.1990). A negligence action against the manufacturer of a product is a common law action. *Moore v. Sitzmark Corp.,* 555 N.E.2d 1305, 1308 (Ind.Ct.App. 1990).

The elements of negligence are: (1) a duty; (2) failure to adopt the standard of care which is required by the duty; and (3) an injury resulting from a breach of the standard of care. *Bamberger & Feibleman v. Indianapolis Power & Light Co.,* 665 N.E.2d 933, 937 (Ind.Ct. App.1996). Summary judgment is rarely appropriate in a negligence action, but should be granted when the undisputed material facts negate at least one element of a claim. *Id.*

Callanen and Guess have contended that they owed no duty to the Kennedys, because neither manufactured the umbrella. The trial court agreed. Whether a duty exists is a question of law to be determined by the court, but whether the defendant breached that duty and whether that breach proximately caused injury to the plaintiff are generally questions to be determined by the trier of fact. *Id.* A duty may arise by statute or by operation of law. *Id.*

The Kennedys claim that a duty is imposed upon Callanen and Guess by the provisions of the Restatement of Torts (Second), § 400, as follows:

One who puts out as his own product a chattel manufactured by another is sub-

ject to the same liability as though he were its manufacturer.

This Court adopted the foregoing provision as the law in Indiana in *Dudley Sports Co. v. Schmitt,* 151 Ind.App. 217, 224, 279 N.E.2d 266, 273 (1972), and explained the rationale supporting the adoption of § 400 as follows:

[A] vendor is liable not only for his own negligence but also for any negligence on the part of the actual manufacturer, even though the vendor could not reasonably discover the defect.... The reason for imposing such liability is not hard to find. When a vendor puts his name exclusively on a product, in no way indicating that it is the product of another, the public is induced to believe that the vendor was the manufacturer of the product. This belief causes the public to rely upon the skill of the vendor. When products are held out in this manner, the ultimate purchaser has no available means of ascertaining who is the true manufacturer. By this act of concealment, the vendor vouches for the product and assumes the manufacturer's responsibility as his own.

*Id.* (citations omitted.) In *Lucas v. Dorsey Corp.,* 609 N.E.2d 1191 (Ind.Ct.App.1993), this Court reaffirmed the *Dudley* holding:

A vendor that holds itself out as a manufacturer of a product and labels the product as such is held to the same standard of care in design, manufacture, and sale of the product as if it were in fact the manufacturer. *See Dudley Sports Company v. Schmitt* (1972) 151 Ind.App. 217, 224, 279 N.E.2d 266, 273, *trans. denied.* Arguably, a trier of fact could find that Dorsey by placing its name on the operating manual and warranty held itself out as the manufacturer of the derrick.

*Id.* at 1201. Guess argues that, regardless of financial benefit garnered from the use of its trademark, section 400 is inapplicable to it, because it merely licensed the use of the trademark. Callanen argues that section 400 is inapplicable to it, because the trademark affixed at its instance was not its own and its only role was that of distributor. We are not persuaded that section 400 should be interpreted so narrowly. Floy Wakuya, Brand Manager at Guess Watches, U.S.A., a Connecticut division of Callanen, implemented the customer promotion whereby the Kennedys obtained the Guess umbrella. Callanen, formerly known as Watches CGI, Inc., is the licensee of Guess for Guess watches worldwide. The record of designated materials does not establish whether or not one corporate entity has ownership in the other. However, it is clear that the consumer received, as a result of the combined efforts of Callanen and Guess, an umbrella that for all practical purposes appeared to be a Guess product.

Callanen and Guess argue that more than merely affixing a trademark should be required for the operation of section 400, quoting the observation of the Connecticut Supreme Court that, although "a nonmanufacturer may under certain circumstances be held liable in the same manner as a manufacturer or seller of a defective product, ... most cases impose liability [under section 400] only after finding that the licensor had a significant role in the chain of distribution." *Burkert v. Petrol Plus of Naugatuck, Inc.,* 216 Conn. 65, 579 A.2d 26, 33–34 (1990). A nonmanufacturer can be held liable pursuant to section 400 only if it "put out a chattel." *Id.* at 78, 579 A.2d at 33. The *Burkert* Court observed that the "apparent manufacturer" doctrine of section 400 had been applied to trademark licensors "with no additional involvement in the stream of commerce" only in isolated cases, (citing *Carter v. Joseph Bancroft & Sons Co.,* 360

F.Supp. 1103, 1107 (E.D.Pa.1973) and *Connelly v. Uniroyal, Inc.*, 75 Ill.2d 393, 27 Ill.Dec. 343, 389 N.E.2d 155, 162 (1979)). *Id.* at 34. The Court also explained that, in jurisdictions where pure trademark liability is not imposed and "additional involvement" is required, determination of adequate involvement in the stream of commerce such that an entity is an "apparent manufacturer," ordinarily presents a question of fact that may be resolved by examination of such factors as the licensor's right of control over the product design, the fees received for the use of the trademark, the prominence of the trademark, supply of components, participation in advertisement and the degree of economic benefit to be gained from the licensing agreement. *Id.* at 33–35. Guess reserved the right to approve the logo location and received fees pursuant to the licensing agreement. The degree of economic benefit derived from the licensing agreement is not ascertainable from the record of designated materials herein, although apparently there was sufficient benefit to induce an agreement between the parties for the use of the trademark as a component of this product.

We do not read *Dudley* and *Lucas* as imposing "pure" trademark liability. In *Dudley*, the defendant was a vendor or seller. In *Lucas*, the defendant put out an operating manual and warranty. However, even where pure trademark liability is not imposed and participation in the stream of commerce is required before a duty of care is recognized, a question of fact remains as to whether Guess or Callanen or both exercised the requisite degree of involvement in the stream of commerce to be considered an apparent manufacturer.

Nevertheless, Callanen and Guess urge this Court to adopt the Restatement (Third) of Torts § 14, providing that the apparent manufacture doctrine does not apply to trademark licensors. We conclude that the rationale of *Dudley* has continuing viability in the contemporary marketplace. Where one labels a product as a "designer label" product and places it into the stream of commerce, the consumer is induced to believe that the product he receives is of a superior quality. Here, the consumer had no readily available means of ascertaining that the actual manufacturer of his product was a foreign corporation, arguably outside the jurisdiction of Indiana courts.

The exclusivity of the trademark would likely have led a reasonable purchaser to believe that the licensor had put out the item as its own product. Essentially, if Callanen or Guess had sufficient involvement with the product such that they placed the umbrella into the stream of commerce, identifying the product as their own, they have "vouched" for the product. *Dudley*, 151 Ind.App. at 224, 279 N.E.2d at 273. Moreover, they cannot exploit the economic benefits derived from the licensure of the trademark and, in turn, ignore the consequences of defective products associated with the trademark name. Accordingly, Callanen and Guess have not demonstrated their entitlement to judgment as a matter of law on the Kennedys' product negligence claim.

Reversed.

SHARPNACK, J., and DARDEN, J., concur.