In the

# United States Court of Appeals

### For the Seventh Circuit

No. 01-3746

DANIEL M. WILLIAMS,

*Plaintiff-Appellant,*

v.

REP CORPORATION and REP FRANCE,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 97 C 750—**John D. Tinder**, *Judge.*

ARGUED MAY 21, 2002—DECIDED AUGUST 21, 2002

Before BAUER, COFFEY and RIPPLE, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Daniel Williams severely injured his hand in a machine that he was operating for his employer. He brought this products liability action against the machine's manufacturer, REP International, and the manufacturer's United States distributor, REP Corporation. The district court entered summary judgment for REP Corporation because it did not sell, lease or otherwise put into the stream of commerce the machine that injured Mr. Williams, as required for liability under Indiana law. The district court also dismissed Mr. Williams' claim against REP International for want of personal jurisdic-

tion. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

### A. Facts

Mr. Williams injured his hand in July 1995 while operating a V47 rubber injection molding machine for his employer, ENBI of Shelbyville, Indiana ("ENBI/Indiana"). The machine was manufactured by REP International of France[1] for ENBI of Holland ("ENBI/Holland").[2] Before the machine was shipped to ENBI/Holland, REP International altered the machine, which had been set to comply with European safety requirements, to comply with the requirements for machines used in the United States. *See* R.54 at 17-20 & Ex.19. The machine was shipped to ENBI/Holland on June 23, 1995. ENBI/Holland then shipped the machine to ENBI/Indiana. On July 12, 1995, REP International sent REP Corporation of Illinois ("REP Corp."), REP's exclusive United States distributor, a message asking REP Corp. to install the machine for ENBI. REP Corp. completed the installation on July 14, 1995. Mr. Williams' hand was injured while using the machine on July 31, 1995.

---

[1] REP International is a subsidiary of REP, which is the REP parent company and is also based in France.

[2] ENBI purchased the machine from REP Deutschland, but the records of REP International indicate that it manufactured the machine for ENBI/Holland. *See, e.g.*, R.54, Exs.14-20 (French documents listing "Client" as REP Deutschland and indicating that the machine was for ("Pour") ENBI/Holland).

**B.  District Court Proceedings**

Mr. Williams brought a products liability action in an Indiana state court against REP Corp. REP Corp. removed the case to federal court and sought summary judgment. The district court granted the motion, reasoning that REP Corp. could not be liable under the Indiana products liability statute because it had not sold the machine that injured Mr. Williams.

The district court previously had allowed Mr. Williams to amend his complaint to include a claim against "REP France" because the evidence produced in discovery had shown such an entity to be the manufacturer of the machine that had injured Mr. Williams. After the court granted summary judgment in favor of REP Corporation, the court issued a summons for "REP France" to appear and to file an answer to Mr. Williams' amended complaint. The counsel who had represented REP Corp. thereafter appeared on behalf of the defendant named as "REP France." The same counsel then informed the district court that no entity named "REP France" existed and that REP International (of France) manufactured the machine at issue. Counsel then filed a motion to modify the caption in the case to identify REP International as the defendant. In the same motion, REP International moved to dismiss the case for lack of personal jurisdiction. Mr. Williams did not oppose REP International's motion to modify the caption. The district court therefore directed the clerk of the court to modify the caption to show REP International as the defendant. The court also granted REP International's motion to dismiss for want of personal jurisdiction. It held that Indiana's long-arm statute, Trial Rule 4.4, did not permit the exercise of jurisdiction over REP International and that, even if it did, the exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment.

## II

## DISCUSSION

**A. REP Corp.**

At the time of Mr. Williams' injury and on the date that he filed this action in state court, the Indiana products liability statute imposed liability for injury caused by a defective product on "a person who sells, leases, or otherwise puts into the stream of commerce" the defective product. Ind. Code Ann. § 33-1-1.5-3(a) (West 1996).[3] The district court entered summary judgment for REP Corp. because Mr. Williams produced no evidence that REP Corp. sold, leased or otherwise put into the stream of commerce the allegedly defective machine. We review de novo the district court's grant of summary judgment. *See Remer v. Burlington Area School Dist.*, 286 F.3d 1007, 1010 (7th Cir. 2002). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Section 3 of the Indiana products liability act (the Act) sets out the circumstances under which a person may be subject to strict liability for harm caused by a defective product. It reads in relevant part as follows:

> (a) Except as provided in subsection (c), a person who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unrea-

---

[3] That statute was repealed by Pub. L. No. 1-1998, § 221, 1998 Ind. Legis. Serv. 1 (West), and replaced with Ind. Code § 34-20-1 to -9.

sonably dangerous to any user or consumer or to the user's or consumer's property is subject to liability for physical harm caused by that product to the user or consumer or to the user's or consumer's property if that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition, and if:

(1) The seller is engaged in the business of selling such a product; and

(2) The product is expected to and does reach the user or consumer without substantial alteration in the condition in which it is sold by the person sought to be held liable under this chapter.

\* \* \*

(c) A product liability action based on the doctrine of strict liability in tort may not be commenced or maintained against any seller of a product that is alleged to contain or possess a defective condition unreasonably dangerous to the user or consumer unless the seller is a manufacturer of the product or of the part of the product alleged to be defective.

(d) Nothing in this chapter shall be construed to limit any other action from being brought against any seller of a product. If a court is unable to hold jurisdiction over a particular manufacturer of a product or part of a product alleged to be defective, then that manufacturer's principal distributor or seller over whom a court may hold jurisdiction shall be considered, for the purposes of this section, the manufacturer of the product.

Ind. Code Ann. § 33-1-1.5-3 (West 1996).

Mr. Williams submits that REP Corp. is subject to liability under the Act notwithstanding the fact that it did

not actually sell the machine that injured him. He offers
several arguments in support of his contention. First,
Mr. Williams contends that REP Corp. falls within the
Act's definition of "manufacturer" and therefore may be
liable under the Act. The Act defines "manufacturer" to
include "a seller who: . . . (D) is owned in whole or signifi-
cant part by the manufacturer; or (E) owns in whole or
significant part the manufacturer." Ind. Code Ann. § 33-1-
1.5-2(3) (West 1996). The Act defines a "seller" in general
terms as "a person engaged in the business of selling
or leasing a product . . . ." *Id.* § 33-1-1.5-2(5). At the time
the district court entered summary judgment for REP
Corp., the evidence before the court indicated that "REP
France" was the manufacturer of the machine and that REP
Corp. was a wholly owned subsidiary of "REP France."
Even if REP Corp. could be considered a "seller" under
the statute's generic definition, and therefore a "manu-
facturer" because it is owned by "REP France," there is
still no evidence that REP Corp. sold, leased or other-
wise put into the stream of commerce the allegedly de-
fective machine as required by Ind. Code § 33-1-1.5-3(a).
It was later disclosed that REP International manufac-
tured the machine and did not own REP Corp. This devel-
opment does not change the basic analysis. REP, the par-
ent corporation, owns REP International and REP Corp.
Yet, REP Corp. still cannot be said to have sold, leased or
otherwise placed the machine in the stream of commerce.[4]

---

[4] The Act's definition of "manufacturer" effectively prevents
sellers that are wholly owned by manufacturers from exploiting
a limitation on liability provided by Section 3(c) of the Act.
Section 3(c) exempts a seller of a defective product from liability
unless the seller is also the manufacturer. *See* Ind. Code Ann.
§ 33-1-1.5-3(c) (West 1996). The limitation generally protects the
(continued...)

Mr. Williams also submits that, if REP Corp. is not a manufacturer or seller of the machine, Section 3(d) of the Act nevertheless subjects it to liability. Section 3(d) provides that

> [i]f a court is unable to hold jurisdiction over a particular manufacturer of a product or part of a product alleged to be defective, then that manufacturer's principal distributor or seller over whom a court may hold jurisdiction shall be considered, for the purposes of this section, the manufacturer of the product.

Ind. Code Ann. § 33-1-1.5-3(d) (West 1996). According to Mr. Williams, because REP Corp. is REP International's exclusive distributor and seller in the United States, Section 3(d) subjects REP Corp. to liability. In so doing, Mr. Williams suggests, Section 3(d) reflects a state policy of ensuring that companies are held responsible for the injuries they cause and of preventing companies from structuring themselves in such a way as to avoid liability altogether.[5]

---

[4] (...continued)
local retail seller of a defective product from liability. *See* Timothy C. Caress, *Recent Developments in the Indiana Law of Products Liability*, 29 Ind. L. Rev. 979, 999 (1996). But if the seller is also the manufacturer, or if the seller is wholly owned by the manufacturer (or wholly owns the manufacturer), then the exemption does not apply. *See* Ind. Code Ann. §§ 33-1-1.5-2(3) & -3(c) (West 1996).

[5] Mr. Williams relies on *Radio Picture Show Partnership v. Exclusive International Pictures, Inc.*, 482 N.E.2d 1159 (Ind. Ct. App. 1985), which held that service of process upon an executive of one partnership was sufficient for service upon a closely related partnership when the partnerships had organized themselves

(continued...)

Section 3(a) identifies the conduct that exposes a person to liability; a person must "sell[], lease[], or otherwise put[] into the stream of commerce" the defective product. Ind. Code Ann. § 33-1-1.5-3(a) (West 1996). If Section 3(d) were to operate as Mr. Williams suggests, it would broaden the scope of liability beyond that provided for in Section 3(a) because it would subject to liability a person who did not sell, lease or otherwise put into the stream of commerce the defective product. When subsection (d) is read together with the other provisions of Section 3, it becomes apparent that subsection (d) was not meant to expand the scope of liability provided in subsection (a). Subsection (a) begins: "Except as provided in subsection (c) . . . ." Ind. Code. Ann. § 33-1-1.5-3(a). If the Indiana legislature meant subsection (d) to provide for liability in circumstances other than those described in subsection (a), it would have included subsection (d) along with subsection (c) in the opening proviso of subsection (a).

A review of Section 3 as a whole makes clear that subsection (d) operates to temper an exemption from liability afforded to sellers by subsection (c). Although subsection (c) exempts sellers from liability (except when a seller is also the manufacturer), subsection (d) allows for the liability of sellers if the manufacturer of the product is beyond the court's jurisdiction. *See* Ind. Code Ann. § 33-1-1.5-3(c) & (d) (West 1996); Timothy C. Caress, *Recent Devel-*

---

[5] (...continued)
as a "complicated, closed and secret hierarchy of companies" in an attempt to "defeat litigants trying to serve them." *Id.* at 1165. There is no suggestion of such corporate maneuvering here. Mr. Williams simply has sued a corporation that did not sell the allegedly defective product.

*opments in the Indiana Law of Products Liability*, 29 Ind. L. Rev. 979, 999 (1996) ("The effect of these provisions [Ind. Code § 33-1-1.5-3(c) & (d)] is to prevent the user or consumer injured by a product with a manufacturing defect from suing the local retail seller of the product on a strict liability theory unless, for some reasons, the court cannot get jurisdiction over the manufacturer."). Subsection (d) does not, however, subject a person to liability if the person did not engage in any of the conduct identified in subsection (a).[6]

Notwithstanding the language of Indiana's products liability act, Mr. Williams submits that REP Corp. should be liable for the defective product manufactured and

---

[6] Mr. Williams relies on *Kennedy v. Guess, Inc.*, 765 N.E.2d 213 (Ind. Ct. App. 2002), to support the notion that a manufacturer's principal distributor can be liable under the Act if the manufacturer is not subject to the court's jurisdiction even if the principal distributor "had nothing to do with [the product's] safety." Reply Br. of Appellant at 6. In *Kennedy*, the plaintiff, who was injured by a defective umbrella, sued Guess, whose logo the umbrella bore, and Callenen International, a corporation that possessed the right to market products under the Guess name and that had purchased the umbrella from Interasian Resources, a distributor of the umbrella's manufacturer, Interasia Manufacturing. *See Kennedy*, 765 N.E.2d at 216, 219. The court reversed the grant of summary judgment for the defendants, holding that there was an issue of fact whether either of the defendants was the "leading seller or intermediary between seller and manufacturer," such that it could constitute the manufacturer's "principal distributor or seller" for purposes of the Act. *Id.* at 220. The opinion does not indicate clearly the extent to which either of the defendants sold, leased or put into the stream of commerce the umbrella, and the court did not address the issue whether a defendant that did not actually engage in such activity could be liable under the Act.

sold by REP International because REP Corp. is a wholly owned subsidiary of REP, which also owns REP International.[7] He proposes that "[f]undamental fairness in product liability actions requires that the wholly-owned subsidiary of a company located outside the territorial limits of the United States" should be liable for the injury caused by the products manufactured and sold by the parent corporation. Br. of Appellant at 17. But "fundamental fairness" does not require holding a corporation liable for injury caused by a product that the corporation did not sell just because the corporation that did sell the product owns the corporation that did not sell it or is owned by the same parent company. A corporation that is owned by another corporation that sells a product does not derive economic benefits from the sale, and there is no reason that it should be held accountable for the other corporation's act. Moreover, Mr. Williams cites no Indiana case to support his suggestion that we should ignore the language of the Indiana products liability act and permit REP Corp. to be subject to liability for a defective product that it did not sell, lease or put into the stream of commerce. In all of the cases on which Mr. Williams relies, the defendants that the courts allowed to be sued actually sold the injury-causing prod-

---

[7] Mr. Williams does not distinguish between REP International and REP, the parent corporation. Rather, he refers to each as "REP France," because, at the time of the district court's grant of summary judgment, the evidence indicated that "REP France" manufactured the machine and owned REP Corp. The distinction became clear only later, after REP International appeared and moved to dismiss for the court's lack of personal jurisdiction.

ucts.[8] We cannot ignore the language of the Indiana products liability act.

Finally, Mr. Williams submits that REP Corp. was part of the stream of commerce that took the machine from REP International to ENBI/Indiana because REP Corp. installed the machine at the ENBI/Indiana facility and ENBI/Indiana could not have used the machine until REP Corp. installed it. Although Mr. Williams does not explicitly make the argument, he implies that, by installing the machine, REP Corp. put the machine into the stream of commerce and therefore can be liable under Section 3(a) of the Indiana products liability act. *See* Ind. Code Ann. § 33-1-1.5-3(a) (West 1996) (subjecting to liability "a person who sells, leases, *or otherwise puts into the stream of commerce*" the defective product (emphasis added)). Mr. Williams cites no authority in support of such an argument, however, nor did he make the argument in opposing REP Corp.'s motion for summary judgment before the district court. Indeed, Mr. Williams disclaimed making such an argument in his brief in opposition to REP Corp.'s motion for summary judgment.[9] "A party

---

[8] *See Swearngin v. Sears Roebuck & Co.*, 376 F.2d 637 (10th Cir. 1967); *Tate v. Renault, Inc.*, 278 F. Supp. 457 (E.D. Tenn. 1967); *Green v. Equitable Powder Mfg. Co.*, 95 F. Supp. 127 (W.D. Ark. 1951); *Shirley v. Drackett Prods. Co.*, 182 N.W.2d 726 (Mich. Ct. App. 1970).

[9] In his brief in opposition to REP Corp.'s motion for summary judgment, Mr. Williams endeavored to distinguish *Whitaker v. T.J. Snow Co.*, Inc., 953 F. Supp. 1034 (N.D. Ind. 1997), a case on which REP Corp. had relied for the proposition that a plaintiff must prove that the seller placed the defective product into the stream of commerce. Mr. Williams notes that "the plaintiff in *Whitaker* was attempting to prove that by 'refurbish-

(continued...)

waives any argument that it does not raise before the district court or, if raised in the district court, it fails to develop on appeal." *Hojnacki v. Klein-Acosta*, 285 F.3d 544, 549 (7th Cir. 2002).

Because REP Corp. did not sell, lease or otherwise put into the stream of commerce the machine that caused Mr. Williams' injury, it cannot be liable under the Indiana products liability act.[10]

## B. REP International

Mr. Williams submits, as he did before the district court, that the Indiana long-arm statute, Trial Rule 4.4(A),[11]

---

[9] (...continued)
ing' the seam welder [the allegedly defective product], the seller was somehow 'introducing' the welder into the stream of commerce. In the case at bar, the plaintiff is NOT asserting any such argument." R.53 at 14-15 (emphasis in original). Thus, not only did Mr. Williams fail to argue that REP Corp. had put the machine into the stream of commerce by installing the machine at the ENBI/Indiana facility, but the argument is in the same vein as one he explicitly disclaimed making before the district court.

[10] Mr. Williams also submits that a question of fact remains whether REP Corp. exercised reasonable care in installing the machine that injured him. Mr. Williams' complaint sounds only in strict liability, however, and not in negligence. Nor did Mr. Williams argue before the district court in opposing REP Corp.'s motion for summary judgment that REP Corp. had negligently installed the machine. He therefore has waived such an argument on appeal.

[11] "Although Indiana has a trial rule, it performs the same function as a long-arm statute . . . ." *Anthem Ins. Cos., Inc. v. Tenet Healthcare Corp.*, 730 N.E.2d 1227, 1231 n.6 (Ind. 2000).

allows Indiana courts to exercise personal jurisdiction over any defendant so long as the exercise of such jurisdiction does not violate the Due Process Clause of the Fourteenth Amendment. Although Mr. Williams cites numerous cases in support of his position, we cannot accept such a proposition because the Supreme Court of Indiana itself has rejected it. *See Anthem Ins. Cos., Inc. v. Tenet Healthcare Corp.*, 730 N.E.2d 1227, 1232 (Ind. 2000). In *Anthem*, the Supreme Court of Indiana acknowledged that many Indiana Court of Appeals decisions had held "that Indiana Trial Rule 4.4 is intended to extend personal jurisdiction of courts sitting in this state . . . to the limits permitted under the Due Process Clause of the Fourteenth Amendment." *Id.* (internal quotation marks omitted). It held, however, that because Indiana's long-arm statute enumerated the circumstances in which an Indiana court could exercise jurisdiction over a non-resident defendant, "the correct approach under Indiana Trial Rule 4.4(A) is to[] engage in a two-step analysis, first determining whether the conduct falls under the long-arm statute and then whether it comports with the Due Process Clause as interpreted by the United States Supreme Court and courts in this state." *Id.*

The district court considered and correctly rejected Mr. Williams' contention that the reach of Trial Rule 4.4 was coextensive with that of the Fourteenth Amendment. In so doing it relied on the Supreme Court of Indiana's decision in *Anthem* and noted that in submitting his interpretation of Trial Rule 4.4, "Williams ha[d] failed to discuss or even mention the effect of recent Indiana Supreme Court jurisprudence, specifically requiring a separate analysis of the Indiana long-arm statute, on this contention." Appellant's Br. at App. 21-22 n.4.

Despite the district court's treatment of Mr. Williams' jurisdictional argument, Mr. Williams again failed to ad-

dress the *Anthem* decision in his briefs before this court. Moreover, REP International pointed out in its brief that Mr. Williams had failed properly to address Trial Rule 4.4 in his initial appellate brief and suggested that Mr. Williams had therefore waived any argument that Rule 4.4 could provide for personal jurisdiction. Yet, given another opportunity to address the effect of Trial Rule 4.4 in his reply brief, Mr. Williams again ignored the issue and, indeed, failed to respond to REP International's waiver argument. Under these circumstances, we must hold that Mr. Williams has waived any argument that Trial Rule 4.4 would permit the exercise of personal jurisdiction over REP International.

## Conclusion

The judgment of the district court is affirmed.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-97-C-006—8-21-02