Keith CANSLER, Appellant–Plaintiff,

v.

Earl MILLS and General Motors Corporation, Appellee–Defendant.

No. 05A02–0107–CV–467.

Court of Appeals of Indiana.

April 2, 2002.

Chris M. Teagle, Muncie, IN, Attorney for Appellant.

Philip L. Harris, Julie A. Labunski, Holland & Knight LLP, Chicago, IL, Scott Schockley, Defur, Voran, Hanley, Radcliffe & Reed, Muncie, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Keith Cansler appeals the trial court's order granting summary judgment in favor of General Motors in Cansler's product liability case. In particular, Cansler asserts that the trial court abused its discretion when it disregarded the designated testimony of a mechanic who examined Cansler's Corvette after it was in an accident and opined that the Corvette's air bag should have deployed. In addition, Cansler argues that he designated sufficient evidence to rebut the statutory presumption that the Corvette's air bag was not defective. We find that the trial court abused its discretion in excluding all of the mechanic's testimony because it included the mechanic's observations of the wrecked car. Because Cansler designated sufficient evidence to rebut the statutory presumption, we reverse.

## Facts and Procedural History

On January 27, 1998, Cansler wrecked his 1994 Corvette. While driving the Corvette on Interstate 69 at a speed of 45–50 miles per hour, Cansler rear-ended a car driven by Earl Mills, which came over into Cansler's lane after hitting the car in front of it. The Corvette's air bag never deployed. On May 24, 1999, Cansler filed suit against Mills for damages resulting from the collision, and on January 7, 2000, Cansler amended the complaint to add General Motors as a defendant alleging a claim for product liability due to the failure of the Corvette's air bag to inflate at the time of the accident.

On November 30, 1999, General Motors filed a motion for summary judgment alleging that the air bag installed in the 1994 Corvette complied with the 1994 Federal Motor Vehicle Standard; therefore, there was a rebuttable presumption that the Corvette was not defective. General Motors added that Cansler failed to designate any appropriate evidence that would rebut this presumption because expert witness testimony was required for the rebuttal. In response, Cansler submitted the deposition of Bruce L. Brake, an auto mechanic who examined Cansler's Corvette after the collision. Brake testified that the Corvette had front-end damage to the vehicle's frame. Thirteen hours of labor and the replacement of the front frame crossmember were required to repair the damage to the Corvette's frame. Based on his observations of other wrecked vehicles with front-end frame damage, Brake proceeded to testify that the Corvette's air bag should have deployed. Finding that Brake was not qualified to issue an expert opinion, the trial court ruled that Brake's testimony regarding the air bag's failure to deploy was inadmissible. The trial court granted summary judgment in favor of General Motors. This appeal ensued.

## Discussion and Decision

Cansler argues that the trial court erred when it granted General Motors' summary judgment motion. Cansler contends that the trial court abused its discretion when it disregarded Brake's testimony. In addition, Cansler asserts that he designated sufficient evidence to rebut the presumption that the Corvette's air bag was not defective.

■ Summary judgment is appropriate if the "designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *U–Haul Int'l, Inc. v. Nulls Mach. & Mfg. Shop,* 736 N.E.2d 271, 274 (Ind.Ct. App.2000), *reh'g denied, trans. denied* (quoting Ind. Trial Rule 56(C)). The moving party bears the burden of specifically designating materials that make a prima facie showing that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *U–Haul,* 736 N.E.2d at 274. If these two requirements are met, the burden shifts to the nonmovant to set forth designated facts showing the existence of a genuine issue for trial. *Id.* A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Id.*

■ On appeal from summary judgment, the reviewing court faces the same issues that were before the trial court and analyzes them the same way. *Moberly v. Day,* 757 N.E.2d 1007, 1009 (Ind.2001). While the nonmovant bears the burden of demonstrating that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to be sure that the nonmovant was not wrongly de-

nied his or her day in court. *Id.* We view the pleadings, depositions, answers to interrogatories, and affidavits in the light most favorable to the non-moving party. *Carie v. PSI Energy, Inc.,* 715 N.E.2d 853, 855 (Ind.1999).

## I. Exclusion of Testimony

Cansler argues that the trial court erred in excluding Brake's testimony. Specifically, Cansler asserts that Brake's testimony should not have been excluded because it was based on Brake's observation and skill rather than on scientific principles.

It is within the trial court's sound discretion to decide whether a person qualifies as an expert witness. *Creasy v. Rusk,* 730 N.E.2d 659, 669 (Ind.2000). Indiana Evidence Rule 702 provides that a witness may be qualified as an expert by virtue of "knowledge, skill, experience, training, or education." *Id.* (quoting Ind. Evidence Rule 702(a)). Only one characteristic is necessary to qualify an individual as an expert. *Creasy,* 730 N.E.2d at 669. Therefore, a witness may qualify as an expert on the basis of practical experience alone. *See id.* However, "[e]xpert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable." *West v. State,* 755 N.E.2d 173, 180 (Ind.2001) (quoting Evid. R. 702(b)); *Ford Motor Co. v. Ammerman,* 705 N.E.2d 539, 550 (Ind.Ct.App.1999), *trans. denied, cert. denied by* 529 U.S. 1021, 120 S.Ct. 1424, 146 L.Ed.2d 315 (2000). We will reverse a trial court's decision to exclude evidence only if that decision is clearly against the logic and effect of the facts and circumstances before this court, or the reasonable, probable and actual deductions to be drawn therefrom. *Wallace v. Meadow Acres Manufactured Hous., Inc.,* 730 N.E.2d 809, 812 (Ind.Ct.App.2000), *trans. denied.*

In his deposition, Brake admitted that he had never consulted in a case where an air bag had been defective, attended classes relating to Corvettes, or done any work designing or testing air bags. Brake also admitted that he was not aware of the underlying scientific principles that relate to air bag deployment. However, Brake testified that he had been a mechanic since approximately 1970 and that he has been in the business of restoring salvaged vehicles for approximately 18 years. In 1992, Brake started his own car sales and automobile repair and salvage business, Bruce's Repair, Body and Wrecker Service. Brake testified that through his employment he had examined numerous wrecked automobiles with deployed air bags. In particular, Brake worked on at least 20 to 25 wrecked Corvettes over the last ten years. Brake noted that, like the other wrecked automobiles he had examined, the air bags in the Corvettes were deployed when the cars had front-end damage extensive enough to cause damage to the cars' frame.

Three to four days after Cansler's accident, Brake examined Cansler's Corvette. Brake asserted that the Corvette had damage to the front frame section. Brake then gave his opinion that based on his observations of other vehicles that had been in accidents severe enough to cause front frame damage, the air bag in Cansler's Corvette should have deployed because the Corvette hit hard enough to cause front frame damage. In its summary judgment motion, General Motors argued that Brake was not qualified to give an expert opinion on air bag deployment and that his opinion had no scientific basis or foundation. The trial court agreed with General Motors and excluded Brake's testimony.

In its Order on Motion for Summary Judgment, the trial court made the following conclusions regarding Brake's opinion:

1. That the deployment of an air bag system as a result of a collision is governed by scientific principles that are not within the common knowledge of a lay person.

2. That although Bruce Brake may be an expert in various areas of automotive repair, he lacks the knowledge, skill, experience, training or education to render a scientific opinion regarding the design and deployment of air bag systems.

3. That it is the Court's function to determine whether or not an expert's testimony has a sufficiently reliable basis so that the expert's testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. *Rogers Ex Rel. Rogers v. Cosco, Inc.*, 737 N.E.2d 1158 (Ind.Ct.App.2000)

4. That the opinion of Bruce Brake in regards to the failure of the air bag to deploy is inadmissible as evidence in this summary judgment proceeding just as it would be at the trial itself.

Appellant's App. p. 276–77. While Brake's experience with various areas of automotive repair provided him with some knowledge in the area of air bag deployment, there was ample evidence presented to the court to suggest that Brake did not have enough experience with the fundamentals of air bag deployment to qualify him as an expert in the area. Brake never consulted in a case where an air bag had been defective, never had training in air bags, never attended classes relating to Corvettes, and never worked designing, testing, or certifying air bag systems. Therefore, we find that the trial court did not abuse its discretion when it found that Brake did not qualify as an expert witness in the area of air bag deployment.

However, "[q]ualification under Rule 702 (and hence designation as an expert) is only required if the witness's opinion is based on information received from others pursuant to [Indiana Evidence] Rule 703 or on a hypothetical question." 13 ROBERT LOWELL MILLER, JR., INDIANA EVIDENCE § 701.105 at 321 (2d 1995). The testimony of an observer, skilled in an art or possessing knowledge beyond the ken of the average juror may be nothing more than a report of what the witness observed, and therefore, admissible as lay testimony. *Vasquez v. State*, 741 N.E.2d 1214, 1216 (Ind.2001). This type of evidence is not a matter of "scientific principles" governed by Indiana Evidence Rule 702(b); rather, it is a matter of the observations of persons with specialized knowledge. *See Jervis v. State*, 679 N.E.2d 875, 881 (Ind.1997).

Such witnesses possessing specialized knowledge are often called skilled witnesses or skilled lay observers. *Warren v. State*, 725 N.E.2d 828, 831 (Ind. 2000); *Mariscal v. State*, 687 N.E.2d 378, 380 (Ind.Ct.App.1997), *trans. denied.* A "skilled witness" is a person with "a degree of knowledge short of that sufficient to be declared an expert under Ind. Evid. Rule 702, but somewhat beyond that possessed by the ordinary jurors." *Mariscal*, 687 N.E.2d at 380; MILLER, *supra*, § 701.105 at 318. Skilled witnesses not only can testify about their observations, they can also testify to opinions or inferences that are based solely on facts within their own personal knowledge. *See* MILLER, *supra*, § 701.105 at 319–20. In order to be admissible under Evidence Rule 701, opinion testimony of a skilled witness or lay observer must be "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." *Mariscal*, 687 N.E.2d at 380 (quoting Ind. Evidence Rule 701).

Brake's testimony consisted of a report of his observations from his examination of Cansler's Corvette as well as his opinion based on those observations. Brake reported that he examined Cansler's Corvette and found that it had damage to the front frame section. Brake also testified that over the course of his career restoring salvaged vehicles, when he observed wrecked automobiles equipped with air bags that had suffered front-end frame damage during an accident, the air bag in the vehicles had deployed. Brake's testimony concerning the location and the extent of the damage to Cansler's Corvette and the condition of other automobiles that he examined during the course of his career was merely a report of his personal observations.

Even though Brake's knowledge of air bags did not rise to a sufficient level to qualify him as an expert in the field, Brake could testify to his observations. Brake's years of experience in automobile salvage enabled him identify that Cansler's Corvette suffered front frame damage as a result of the accident. While Brake may not have been qualified to render an opinion on the deployment of the Corvette's air bag, he could testify about observations from his years of experience with wrecked automobiles and from his examination of Cansler's Corvette. Therefore, we find that the trial court abused its discretion when it excluded all of Brake's testimony.

## II. Indiana Products Liability Rebuttable Presumption

Cansler argues that the trial court erred in granting General Motors' summary judgment motion because it improperly applied the rebuttable presumption found under Indiana Code § 34–20–5–1. In its order granting summary judgment, the trial court made the following conclusions:

5. That in the absence of the opinion of Bruce Brake, no other evidence has been designated by plaintiff that would overcome the presumption in favor of the defendant, General Motors Corporation, as provided for in Indiana Code 34–20–5–1 and the Federal Motor Vehicle Safety Standard 208.

6. That the plaintiff, not having submitted admissible designated materials that contradict the defendant, General Motors, designated evidence; warrants a finding that no genuine issue of material fact exists.

7. That the defendant, General Motors, is entitled to summary judgment pursuant to their Motion filed herein.

Appellant's App. p. 277. Cansler argues that General Motors did not sustain its burden of proof to trigger the statutory presumption. In addition, Cansler asserts that even if the statutory presumption was established, he presented sufficient evidence to rebut that presumption.

The statutory presumption found in Indiana's Products Liability Act establishes that:

In a product liability action, there is a rebuttable presumption that the product that caused the physical harm was not defective and that the manufacturer or seller of the product was not negligent if, before the sale by the manufacturer, the product:

(1) was in conformity with the generally recognized state of the art applicable to the safety of the product at the time the product was designed, manufactured, packaged, and labeled; or

(2) complied with applicable codes, standards, regulations, or specifications established, adopted, promulgated, or approved by the United States or by Indiana, or by an agency of the United States or Indiana.

Ind.Code § 34–20–5–1. See also Rogers ex rel. Rogers v. Cosco, Inc., 737 N.E.2d

1158, 1166 (Ind.Ct.App.2000), *trans. denied*; *McClain v. Chem–Lube Corp.*, 759 N.E.2d 1096, 1101 (Ind.Ct.App.2001). The rebuttable presumption under Indiana Code § 34–20–5–1 does not shift the burden of proof but it does impose upon the opposing party a burden of producing evidence. *See McClain*, 759 N.E.2d at 1101. If the opponent produces evidence that rebuts the presumption, it serves no further purpose. *Id*

### A. Establishment of the Presumption

Cansler asserts that the trial court erred in finding that the facts of this case established the statutory presumption. In support of its argument that the statutory presumption was applicable, General Motors presented a copy of the 1994 Corvette's Federal Motor Vehicle Safety Standard 208 (FMVSS 208) Certification, which relates to the applicable federal standards for occupant crash protection. 49 C.F.R. § 571.208 (1994). The compliance documentation for FMVSS 208 provides that the 1994 Corvette is equipped with a supplemental inflatable restraint system in conformity with FMVSS 208 S4.1.2.1(a) and the applicable crash protection requirements and injury criteria.[1]

The designated evidence demonstrates that the Corvette's air bag complied with the applicable United States government standards found in FMVSS 208. Establishing that the 1994 Corvette met the FMVSS 208 standards created the rebuttable presumption that the Corvette's air bag was not defective. Based upon the designated evidence submitted by General Motors, we conclude that the trial court was correct in finding that the rebuttable presumption was established.

### B. Rebuttal of the Presumption

Cansler also asserts that even if the statutory presumption has been established, he presented sufficient evidence to rebut that presumption. In its order granting summary judgment, the trial court excluded Brake's opinion testimony and found that Cansler designated no other evidence that would rebut the presumption found under Indiana Code § 34–20–5–1. Appellant's App. p. 277. As we found earlier, the trial court erred when it excluded Brake's testimony concerning his observations of Cansler's Corvette. We conclude that the designated evidence presented to the trial court, including Brake's testimony, was sufficient to rebut the statutory presumption found under Indiana Code § 34–20–5–1.

Along with the FMVSS 208 Certification, General Motors also designated as evidence a portion of the 1994 Corvette Owner's Manual and a signed report interpreting the printout from Cansler's Corvette's Diagnostic Energy Reserve Module (DERM).[2] The designated selection of the

---

1. The 1994 Corvette met the acceptable injury criteria after undergoing crash tests pursuant to FMVSS 208 S5.1(a). The crash tests established by FMVSS 208 S5.1(a) direct the manufacturer to:

   [i]mpact a vehicle traveling longitudinally forward at any speed, up to and including 30 mph, into a fixed collision barrier that is perpendicular to a line of travel of the vehicle, or at any angle up to 30 degrees in either direction from the perpendicular to the line of travel of the vehicle.

   49 C.F.R. § 571.208 S5.1(a)(1994).

2. The DERM is "a control mechanism for the airbag system and [it] records data on the actions of the system." *Sipes v. Gen. Motors Corp.*, 946 S.W.2d 143, 153 (Tex.App.1997), *reh'g overruled, writ denied*. *See also Harris v. Gen. Motors Corp.*, 201 F.3d 800, 804 (6th Cir.2000). In this case, the DERM's printout revealed that no deployment event occurred and that there were no history codes associated with crash detection and no fault codes associated with malfunctions in the DERM's memory. Appellee's App. p. D. As courts in other jurisdictions have noted, however, with-

1994 Corvette Owner's Manual provides in pertinent part:

> The air bag is designed to inflate in moderate to severe frontal or near-frontal crashes. The air bag will only inflate if the velocity of the impact is above the designed threshold level. When impacting straight into a wall that does not move or deform, the threshold level for most GM vehicles is between 9 and 15 mph (14 and 23 km/h). However, this velocity threshold depends on the vehicle design and may be several miles-per-hour faster or slower. In addition, this threshold velocity will be considerably higher if the vehicle strikes an object such as a parked car which will move and deform on impact. The air bag is also not designed to inflate in rollovers, side impacts, or rear impacts where the inflation would provide no occupant protection benefit.
>
> . . . .
>
> In any particular crash, the determination of whether the air bag should have inflated cannot be based solely on the level of damage on the vehicle(s). Inflation is determined by the angle of the impact and the vehicle's deceleration, of which vehicle damage is only one indication. Repair cost is not a good indicator of whether an air bag should have deployed.

Appellee's App. p. F (emphasis added).

In response to the summary judgment motion, Cansler designated Brake's deposition and Cansler's interrogatory responses. In his interrogatory responses, Cansler asserted that his Corvette was traveling at "[a]pproximately 45 to 50 mph" at the time he rear-ended Mills' car.

Appellant's App. p. 243. Brake testified that Cansler's Corvette hit hard enough in the accident to cause front-end damage to the vehicle's frame.

■ General Motors asserts that Cansler had to designate expert testimony to rebut the presumption found under Indiana Code § 34–20–5–1. We disagree. Expert testimony is not always required to establish an element of a products liability action if there is sufficient circumstantial evidence within a lay person's understanding that would constitute a basis for a legal inference and not mere speculation. *U–Haul*, 736 N.E.2d at 285 n. 3. In order to justify dismissing a case because the plaintiff has failed to present expert testimony, a court must find that the facts necessary to establish a prima facie case cannot be presented to any reasonably informed factfinder without the assistance of expert testimony. *Silvestri v. Gen. Motors Corp.*, 210 F.3d 240, 244 (4th Cir.2000) (finding that the testimony of an air bag expert was not needed to survive summary judgment when the air bag's defect in failing to deploy could be established by presenting a circumstantial case); *but see Wood v. Toyota*, 134 Md.App. 512, 760 A.2d 315 (2000), *cert. denied* (finding that expert testimony was required to establish that a motorist's chemical burns were caused by a design defect in the vent holes of the vehicle's air bag which allowed hazardous materials to come in contact with the driver's face).

■ In this case, Cansler designated sufficient circumstantial evidence to rebut the presumption that the air bag was not defective. The 1994 Corvette Owner's Manual entered into evidence by General

---

out evidence that the DERM itself was functioning properly, the printout was not irrefutable evidence that the air bag performed properly. *See Neilsen v. Am. Honda Motor*

Co., 92 Hawai'i 180, 989 P.2d 264, 269 (1999), *cert. dismissed; Sipes*, 946 S.W.2d at 153.

Motors explained that the air bag in the car was designed to deploy when the vehicle was in a moderate to severe frontal or near-frontal crash. The Owner's Manual also clarified that in order for the air bag to deploy, the car should be traveling at a speed between 9 and 15 mph or, in some cases, a considerably higher velocity if the car hits another object that can absorb some of the impact. Cansler's designated evidence could support an inference that his air bag was defective because it did not deploy despite the presence of all the necessary elements outlined in the Owner's Manual.

The designated evidence shows that the Corvette's air bag never deployed even though Cansler was traveling between 45 to 50 mph when he rear ended Mills' car and the Corvette hit hard enough to cause front-end damage to its frame. The evidence indicates that the crash was severe enough to require repairs that included 13 hours of labor on the front of the Corvette's frame and the replacement of the front frame crossmember. We find that this designated evidence was enough to rebut the presumption found under Indiana Code § 34–20–5–1 and to demonstrate that there remains a genuine issue of material fact as to whether the air bag was defective for not deploying. Therefore, we conclude that the trial court erred in granting summary judgment in favor of General Motors.

Judgment reversed.

FRIEDLANDER, J., and BARNES, J., concur.