Anthony S. BURT, Plaintiff,

v.

MAKITA USA, INC. and Makita
Corporation of America,
Defendants.

No. 1:01CV–205.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

July 26, 2002.

Scott T. Niemann, Fort Wayne, IN, for Plaintiff.

Kathleen M. Anderson, Gary C. Furst, Barnes and Thornburg, Fort Wayne, IN, Russel Bruce Duffield, Phillip Russell Perdew, Lord Bissell and Brook, Chicago, IL, for Defendants.

### MEMORANDUM OF DECISION AND ORDER

WILLIAM C. LEE, Chief Judge.

This matter is before the Court on a motion for summary judgment filed by the defendants Makita USA and Makita Corporation on May 14, 2002. Plaintiff, Anthony S. Burt, filed a response to that motion on July 1, 2002, to which defendants replied on July 19, 2002. For the following reasons, the motion for summary judgment will be granted.

### Factual Background

This products liability action arose as a result of a workplace accident wherein plaintiff was injured by a saw manufactured and/or distributed by the defendants. The facts underlying the case are relatively undisputed and are as follows.

On November 18, 1999, plaintiff was injured while utilizing a Makita Model 2703 Table Saw which was manufactured by Makita Corporation of America and distributed by Makita USA, Inc. The injury occurred while plaintiff was working as a carpenter at a jobsite in Huntington, Indiana. The general contractor in charge of the job site was Marshall Erdman & Associates.[1] One of its employees, Pat Dolan was the construction superintendent.

The saw at issue has a 22″ × 27″ working surface or table. It is a circular table saw with a removable blade guard. The Instruction Manual provided with the saw describes the proper method for installing the blade guard. Installation requires the use of a Phillips screwdriver and special wrenches. The wrenches are supplied with the saw and can be stored in a compartment on the side of the saw.

Two bolts are used to secure the blade guard in place. The bolts which are located under the table are tightened to secure the blade guard after it is slid into place on the top of the table. By all estimates, the blade guard can be properly attached within five minutes.

The accident in this case arose as a result of the improper installation of the blade guard. A few minutes before the accident, Dolan noticed that the blade guard was not installed on the saw, nor even in the vicinity of the saw. He retrieved the blade guard and set about to install it. Realizing he did not have either

---

1. The saw was new and purchased by Marshall Erdman & Associates from a retailer in Madison, Wisconsin. It was delivered to the jobsite on November 8, 1999.

a Phillips screwdriver or the wrenches needed to complete the installation, Dolan left the guard to go get the tools.

The guard was left in what appeared to be the installed position. However, the bolts needed to secure the guard firmly in place had not been tightened. Unfortunately, in the few minutes that Dolan was away from the saw, plaintiff approached the saw. Plaintiff believed that the guard was in place and that the saw had been recently used. When he began to saw,[2] the guard apparently came in contact with the spinning blade.[3] The guard was thrown off the saw and hit plaintiff in the eye.

As manufactured, the guard was intended to be removable because some cuts were to be made with the guard in place and others required that the guard not be on the machine. The table saw was available for use by all of Marshall Erdman & Associates at the worksite.

The saw complied with the Underwriters Laboratories safety standard 987. That standard provided in relevant part that "[t]he means for attaching the spreader shall be such that (1) the spreader can be readily attached in the correct location, and (2) it is difficult or impossible to mount the spreader in an incorrect location that would involve risk of injury to persons."

Plaintiff's expert, Charles P. Reynolds, a licensed engineer, has opined that the saw as manufactured and sold violates U.L. 987. The core of his believe that the saw

is defective[4] is that "you can come up and place the blade guard on the saw in a way that looks like it is supposed to when it is properly clamped but isn't, and so it is mounted on the saw in a condition which causes a risk of injury to people." That was done in this case, according to Reynolds, when Dolan slid the slotted tang of the spreader over the upper mounting bold which made the guard appear to be installed when it fact it was not.[5]

Reynolds has suggested alternative designs and warnings that he believes may have prevented the accident in this case. First, he suggests that the saw could be designed so that the guard could be designed without the need for tools or designed so that the tools were actually physically attached to the saw. That notwithstanding, Reynolds has admitted that the method of attaching the blade guard in this case was not inconvenient or burdensome and that indeed the method utilized was common to all saws with which he was familiar and further that he knew of no saws on the market which utilized any of the design changes he proposed.

Reynolds has also suggested design changes, such as warning labels, which he believes would make it more difficult for the guard to be left in a position where it appeared installed when in fact it was not. Here again, however, he admitted that he did not know of any saws on the market wherein the guard could not be placed on the saw so as to appear attached when it was not.[6]

---

**2.** Plaintiff was working with another employee to make and install 2″ × 4″ wood blocking on which to hang cabinets.

**3.** The blade on the saw rotates towards the user at a speed of approximately 200 feet per second.

**4.** Interestingly, when Reynolds first looked at the saw (and before he knew of the particular facts of this case), nothing occurred to him

which would suggest that the design was wrong or hazardous.

**5.** Quite obviously, there was nothing in the method of attachment or design that encouraged a user to leave the guard in the position that Dolan left it, i.e., he could have easily placed it off to the side when he went to get tools.

**6.** In fact he did not describe any testing or studies utilizing any of his design changes or

Plaintiff has admitted that the reason for the accident was the incomplete attachment of the blade guard and his subsequent use of the saw. The record also reveals that use of the saw under such circumstances is a rarity—no one has recalled a similar occurrence.

### Application of Law

Based upon the foregoing factual scenario, suit was filed in the Allen Circuit Court and removed to this Court based upon diversity of citizenship. In his complaint, plaintiff alleges that the table was defectively designed by the defendants and was unreasonably dangerous at the time that the saw was sold to his employer. He also asserts that the defendants failed to provide adequate warnings or instructions to the user as to the hazards posed by use of the saw when the blade guard is not properly affixed.

Since this is a diversity action and the parties in their briefs have applied Indiana law this Court too will apply the substantive law of the forum state. *See, Gould v. Artisoft, Inc.*, 1 F.3d 544, 549, fn. 7 (7th Cir.1993). The procedural aspects are of course governed by federal law and it is to those standards under Rule 56 of the Federal Rules of Civil Procedure which the Court first turns.[7]

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir.1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the nonmoving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 2512; *In Re Matter of Wildman*, 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Township High School District No. 204*, 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d

---

any testing or research which would suggest his design changes would result in a safer product.

7. There is "marked difference in summary judgment procedure in Indiana as compared to federal practice. In Indiana, the party moving for summary judgment has the burden of establishing that no genuine issue of material fact exists.... Once the moving party has met this burden with a prima facie showing, the burden shifts to the nonmoving party to establish that a genuine issue does in fact exist. In contrast, the federal summary judgment approach requires summary judgment to be granted against a party who fails to establish an essential element of that party's case as to which that party bears the burden of proof at trial." *Schmidt v. American Trailer Court, Inc.*, 721 N.E.2d 1251, 1253 (Ind.App.1999) (internal citations omitted).

317, 322 (7th Cir.1992) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt*, 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.*, 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).

With those procedural standards in mind, the Court turns to the applicable Indiana substantive law. Products liability actions in Indiana are governed by the Indiana Products Liability Act ("the Act"). So far as relevant, the Act provides that "[a] person who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer ... is subject to liability for physical harm cause by that product to the user or consumer." I.C. 34–20–2–1.

The Act is a codification of the common law notion of strict liability, *see, Koske v. Townsend Engineering Co.*, 551 N.E.2d 437, 442 (Ind.1990), and encompasses not only strict liability claims but also negligence actions, *see, Stegemoller v. ACandS, Inc.*, 767 N.E.2d 974, 975 (Ind.2002). In sum, "[t]he Act governs actions by users or consumers against manufacturers or sellers for physical harm caused by products." *Id.* Nevertheless, "although certain procedural portions of the Act are to be strictly construed as in derogation of common law, the viability of tort claims made under the Act, whether sounding in negligence or strict liability, is to be determined by reference to the common law from which the claims originated." *Rogers ex. rel. Rogers v. Cosco, Inc.*, 737 N.E.2d 1158, 1165 (Ind.App.2000), *trans. denied.*

In this case, a threshold issue is whether the saw could be deemed to be defective. The Indiana Product Liability Act provides the following definition of a "defective condition":

> A product is in a defective condition under this article if, at the time it is conveyed by the seller to another party, it is in a condition:
>
> > (1) not contemplated by reasonable persons among those considered expected users or consumers of the product; and
> >
> > (2) that will be unreasonably dangerous to the expected user or consumer when used in reasonably expectable ways of handling or consumption.

I.C. § 34–30–4–1. The Act further provides that "[a] product is not defective under this article if it is safe for reasonably expectable handling and consumption. If an injury results from handling, preparation for use, or consumption that is not reasonably expectable, the seller is not liable under this article." Ind.Code § 34–20–4–3. Moreover, "[i]t is a defense to an action under this article ... that a cause of the physical harm is a misuse of the product by the claimant or any other person not reasonably expected by the seller at the time the seller sold or otherwise conveyed the product to another party." Ind. Code § 34–20–6–4.

As the above-quoted statutory passages suggest, "[i]n Indiana misuse of a product is a defense that completely bars a products liability claim." *Morgen v. Ford*

*Motor Company,* 762 N.E.2d 137, 143 (Ind. App.2002); *see also, Phelps v. Sherwood Medical Industries,* 836 F.2d 296, 304 (7th Cir.1987) ("An unforeseeable misuse of a product also bars an action under Indiana law."). "This is so because it is considered an unforeseeable intervening cause that relieves the manufacturer of liability." *Id.* . . " '[T]he key to a successful claim of misuse is whether the seller can prove that the misuse, from the seller's perspective, was not reasonably foreseeable.' " *Leon v. Caterpillar Industries, Inc.,* 69 F.3d 1326, 1342 (7th Cir.1995) (citation omitted).

■ "The foreseeability of an intervening misuse is usually a question for the jury." *Underly v. Advance Machine,* 605 N.E.2d 1186, 1189 (Ind.App.1993). Nevertheless, summary judgment has been found to be appropriate where use or misuse is not reasonably foreseeable as a matter of law. *See, e.g., Greubel v. Knappco Corp.,* 160 F.3d 409 (7th Cir.1998); *Wingett v. Teledyne Industries,* 479 N.E.2d 51 (Ind.1985). The Court finds this to be just such a case.

Here, defendants provided proper instructions regarding the method of attaching the blade guard to the saw and it would be therefore be reasonable to expect that the blade guard would be attached and used in accordance with the instructions. That generally seems to be what happens inasmuch as even plaintiff's own expert admitted that he is aware of no other accidents caused by a failure to properly install the blade guard. He also indicated that there is nothing about the installation process which would encourage the incomplete and improper installation of the blade guard as occurred in this case. Simply put, there is no evidence that the defendants should have foreseen that someone would leave the blade guard in an incompletely installed position, or that someone would attempt to use the saw with the blade guard improperly attached.

To the contrary, the evidence suggest that the accident was unforeseeable, caused by a very unusual set of factual circumstances.

In this regard, as defendants assert, two opinions of the Seventh Circuit applying Indiana products liability law are instructive. In *Greubel, supra,* a grant of summary judgment was affirmed in favor of a manufacturer of a door where the door, though not designed for it, was installed in a pressurized device. Noting that "a manufacturer cannot be liable for unforeseeable uses of its products, not can it be liable if a product fails to do what it was not intended to do" since "[t]he Act imposes liability only for foreseeable uses of the product," 160 F.3d at 411, 412 n. 12, and also that a manufacturer can reasonably expect that its product would be used in accordance with the descriptions of them, the Seventh Circuit found the use of the product unforeseeable as a matter of law.

In *Estrada v. Schmutz Manufacturing, Co.,* 734 F.2d 1218 (7th Cir.1984), a grant of summary judgment was affirmed in a case where plaintiff was found to have misused a product as a matter of law. There, a factory worker whose job it was was to empty bags of ink paste into a printer's inkwell, took it upon herself to climb up on the machine and ink the rollers (which were some 6 1/2 feet off the ground) by hand with a paint brush when her employer mistakenly purchased ink in liquid rather than paste form. In inking the rollers, the employee's gloved-hand was caught resulting in serious injury. The Seventh Circuit had no problem in concluding that the accident was caused by an unforeseeable misuse of the product since the machine was never intended to be inked by hand.

Like the defendant in *Greubel,* the defendants in this case provided proper instructions regarding the method for at-

taching the blade guard to the saw prior to use. Like the product in *Estrada* while it was possible for the product to be used in the manner in which it was, that mere possibility of misuse does not render a misuse reasonably foreseeable.

■ That the accident in this case was not reasonably foreseeable is easily understood when one looks at the factors that coalesced to permit the accident to happen. First, Dolan, the individual in charge of safety at the job site, decided to attach the blade guard, even though the guard was not necessary for all cuts. Second, in the process of attaching the guard, he realized he did not have the proper tools. Third, he placed the guard on the saw and left it looking attached. Fourth, he left to go get the proper tools. Fifth, in that small window of time, plaintiff happened to approach the saw and begin work which could be done with the guard in place. Sixth, plaintiff did not attempt to determine if the guard was properly in place. Clearly, such a scenario is not reasonably foreseeable.

In reaching the conclusion that the accident in this case occurred as a result of something which was not reasonably foreseeable, this Court is wholly mindful of plaintiff's argument to the effect that it was foreseeable for such an accident to occur since the guard could be left on the machine by another and look to the user as if it was attached. While that may be so, this does not make the accident any more foreseeable than if say someone in the process of attaching the blade failed to tighten it securely and the blade then spun off and injured the user. Certainly one would not expect to hold the manufacturer liable in that instance. Nor, to use another analogy offered by the defendant, would one expect to hold a car manufacturer liable where a mechanic, who in the process of rotating tires placed the wheel back on the vehicle yet failed to tighten the lug

nuts and thereafter an accident occurred. In those cases, as here, it is possible for one user to misuse the product in a negligent way so as to create a risk of injury to another who is unaware of the misuse but the mere fact that such misuse is possible is not enough, in this Court's view, to make that misuse reasonably foreseeable.

Apart from the fact that the injury to the plaintiff was not caused by a foreseeable and expectable use of the product, summary judgment is appropriate because there is no evidence to indicate that the saw was unreasonably dangerous or that the defendants did not use reasonable care in designing the saw or in supplying warnings with the saw.

With respect to defective designs or inadequate warnings, the Indiana Products Liability Act provides that "in an action based on an alleged design defect in the product or based on an alleged failure to provide adequate warnings or instructions regarding the use of the product, the party making the claim must establish that the manufacturer or seller failed to exercise reasonable care under the circumstances in designing the product or in providing the warnings or instructions." As the parties in this litigation recognize, a negligence standard is applied to claims involving design defect and warning claims under Indiana law. *See, Kennedy v. Guess, Inc.*, 765 N.E.2d 213, 220 (Ind.App. 2002). "A negligence action against the manufacturer of a product is a common law action" with the elements being "(1) a duty; (2) failure to adopt the standard of care which is required by the duty; and (3) an injury resulting from a breach of the standard of care." *Id.* "Summary judgment is rarely appropriate in a negligence action, but should be granted when the undisputed material facts negate at least one element of a claim." *Id.*

Here, while defendants had a duty to supply a safe saw and while plaintiff was injured using a saw manufactured or distributed by defendants it does not follow perforce that defendants can be held liable since plaintiff must also show a breach of the standard of care required by the duty. The Seventh Circuit has indicated with respect to the duty to design the following:

> Manufacturers have a duty to design products that are free of flaws which cause injury in the product's use. Thus, a manufacturer will be liable for designing a product with a defective condition which is unreasonably dangerous. Indiana's definition of defect is similar to what is commonly referred to as the consumer expectation test: a product is in a defective condition if the condition is not contemplated by the reasonable consumer and the condition is unreasonably dangerous to the expected user.... 'The requirement that a product be in a defective condition focuses on the product itself; whereas, the requirement that the product be unreasonably dangerous focuses on the reasonable contemplations and expectations of the consumer.' ... We have said, concerning the legal definition of defect, 'The question is not whether it is 'possible' for something untoward to occur during an accident but whether 'the design creates unreasonable danger' according to 'general negligence principles.' ... Essentially, the standard for defects has devolved into a negligence test.

*Whitted v. General Motors Corp.*, 58 F.3d 1200, 1206 (7th Cir.1995) (internal citations omitted).

In the present matter, plaintiff never goes beyond demonstrating that the design of the table saw creates the mere possibility of injury. More, as indicated, is needed. Plaintiff must demonstrate that the design creates an unreasonable risk of injury.

The notion that plaintiff must show more than mere possibilities in order to show negligence in design under Indiana law is made clear by Seventh Circuit law. As indicated, the court in *Whitted* stated that "the standard for defects has devolved into a negligence test" but went on to point out that " 'Indiana requires the plaintiff to show that another design not only could have prevented the injury but also was cost-effective under general negligence principles.' " *Id.quoting Pries v. Honda Motor Co.*, 31 F.3d 543, 546 (7th Cir.1994). Hence in *McMahon v. Bunn–O–Matic Corp.*, 150 F.3d 651, 657 (7th Cir.1998) Judge Easterbrook observed that "a design claim under Indiana law is a negligence claim, subject to the understanding that negligence means failure to take precautions that are less expensive than the net costs of the accident."

■ Here, plaintiff has wholly failed to show a feasible alternative design that would have reduced the risk of injury. To show "that a manufacturer breached its duty to design a safe product under strict liability, a claimant must offer a safer, more practicable design that the design was defective" and "illustrate that a better design was effective ...". *Whitted supra* at 1206. While Reynolds has opined that the guard could have been designed to attach without the need for tools or that the tools used for attaching the guard could be made to stay with the saw, he has not (nor has the plaintiff otherwise) offered any information regarding how his proposed design changes would affect the risk of injury allegedly created by the saw. Nor has plaintiff shown the benefits of the proposed design changes. In fact, there is no evidence that anyone has ever been injured in an accident involving the saw in circumstances similar to those which led to plaintiff's injury. No studies have been done about the feasibility of the changes

and in fact there is no evidence that such design changes have ever been used by another manufacturer. Since plaintiff must show that the current design creates an unreasonable danger of injury because of the likelihood that an injury will occur and that there exists a feasible alternative design (in a cost/benefit sense) which will render the product safe but has not done so, summary judgment is appropriate.

Insofar as plaintiff is asserting a warnings claim, summary judgment is likewise appropriate. What constitutes proper warnings can be debated since more is not always better than less. As was explained in *McMahon:*

> Insistence on more detail can make any warning, however elaborate, seem inadequate. Indiana courts have expressed considerable reluctance to require ever-more detail in warnings. *See Meyers v. Furrow Building Materials,* 659 N.E.2d 1147 (Ind.App.1996); *Welch v. Scripto–Tokai Corp.,* 651 N.E.2d 810 (Ind.App. 1995). For good reasons, laid out in *Todd v. Societe BIC, S.A.,* 9 F.3d 1216, 1218–19 (7th Cir.1993) (en banc) (Illinois law): "Extended warnings present several difficulties, first among them that, the more text must be squeezed onto the product, the smaller the type, and the less likely is the consumer to read or remember any of it. Only pithy and bold warnings can be effective. Long passages in capital letters are next to illegible, and long passages in lower case letters are treated as boilerplate. Plaintiff wants a warning in such detail that a magnifying glass would be necessary to

read it. Many consumers cannot follow simple instructions (including pictures) describing how to program their video cassette recorders." Indiana has the same general understanding. *See Marshall v. Clark Equipment Corp.,* 680 N.E.2d 1102, 1105 (Ind.App.1997).

*McMahon,* 150 F.3d at 656.

█ Regardless of the extent of warning which can or should be given, "[u]nder Indiana law, the scope of the duty to warn is cabined by the foreseeable uses of the product." *Greubel,* 160 F.3d at 411 (collecting cases). Here, as already expressed, there is no evidence that the circumstances of plaintiff's injuries were foreseeable such that defendants had a duty to warn against such circumstances. What would such a warning be? As defendants assert they certainly did not have a duty to warn the plaintiff of the possibility that "if Dolan negligently left the blade guard in place and unattached, and if plaintiff happened to approach the saw within the few minutes that Dolan was gone, and if plaintiff neglected to verify the set up of the saw prior to use, there is a risk of injury." Perhaps the warning could be pithy and to the effect of "WARNING: BE SURE GUARD IS PROPERLY SECURED."[8] But the need for any such warning is dissipated when one considers that there was no reason for Dolan (or any user) to leave the blade guard in place and unattached, that there was a quick and easy way to properly install the blade guard, and the fact that there had never before been a similar accident of which the defendant was aware.[9]

---

8. The Court notes that a review of the exhibits indicates a label on the blade guard which reads:

    Insert blade guide tang so that the lower edge of this Label is flush with the table top when the blade is in the highest UP position. Tighten the screws to clamp the blade guide and replace cover before using the saw.

(Plaintiff's ex. 17, Figure No. 49).

9. Query whether the plaintiff would have noticed or heeded any such warning. In his deposition in response to the question of whether "you ever read the warnings that were actually affixed to the saw" plaintiff stated "not that I recall." (Plaintiff's Deposition, p. 33).

Again, the issue is one of foreseeability—something which this Court finds as a matter of law did not exist.

In his brief, plaintiff "[a]nticipate[s] Makita's reply" and asserts that "it also is not dispositive that Underwriter's Laboratory has 'approved' or 'listed' the subject table saw as complying with U.L. 987." (Rec. 38, p. 18). UL 987 provides in part that "The means for attaching the spreader shall be such that (1) the spreader can be readily attached in the correct location, and (2) it is difficult or impossible to mount the spreader in an incorrect location or a location that would involved risk of injuries to persons." Plaintiff points out that his expert alleges that the saw does not meet the second phrase since the guard can be placed in a location (i.e. where it belongs but not secured) which involves a risk of injury.

As defendants argue, however, this is a non-issue since they are not relying on the UL approval. UL promulgates its own standards and performs its own testing to ensure compliance with the standards.[10] UL makes the decision as to whether a product meets its standards so as to warrant the UL label. Here, UL decided to certify the saw as complying with its standards. If defendants were arguing that the UL certification demonstrates that the saw was non-defective, there may be some merit to plaintiff's contention that his expert witness has opined that the saw does not in fact meet the UL standard.[11] But defendants do not in any way rely on the UL certification but instead assert that the accident was solely the fault of Dolan's negligence and was not due to any alleged design defect or failure to warn, propositions with which this Court agrees.

Unquestionably, the accident in this case was tragic, based as it was on a string of events which led to the injury of the plaintiff. However, the accident was unforesee-

---

**10.** The Seventh Circuit has described the UL approval process as follows:

Underwriters Laboratories (UL), in Northbrook, Illinois, is a not-for-profit testing laboratory that examines and tests numerous products.... Manufacturers submit samples of their products to UL for examination and testing so that UL may independently determine if the products meet specific standards and requirements for fire, electrical, and casualty hazards. If the product meets UL's standards, the manufacturer and UL enter into a "follow-up services agreement," and, at this point, manufacturers may attach UL's certification mark to their product. The agreement provides that UL's mark may only be used: 1) in connection with the covered product; 2) by the manufacturer named in the Procedure; and 3) at the location of the manufacture or assembly specified in the Procedure.

*United States v. 4500 Audek Model Number 5601 AM/FM Clock Radios,* 220 F.3d 539, 540–41 (7th Cir.2000) (footnote omitted).

**11.** There is a statutory presumption found in Indiana's Products Liability Act which provides that:

In a product liability action, there is a rebuttable presumption that the product that caused the physical harm was not defective and that the manufacturer or seller of the product was not negligent if, before the sale by the manufacturer, the product:

(1) was in conformity with the generally recognized state of the art applicable to the safety of the product at the time the product was designed, manufactured, packaged, and labeled; or

(2) complied with applicable codes, standards, regulations, or specifications established, adopted, promulgated, or approved by the United States or by Indiana, or by an agency of the United States or Indiana.

Ind.Code § 34–20–5–1. "The rebuttable presumption under Indiana Code § 34–20–5–1 does not shift the burden of proof but it does impose upon the opposing party a burden of producing evidence." *Cansler v. Mills,* 765 N.E.2d 698, 704 (Ind.App.2002). "If the opponent produces evidence that rebuts the presumption, it serves no further purpose." *Id.* Defendants in this case are not seeking the benefit of any such presumption.

able in a legal sense and this Court can find no basis on which to hold the defendants liable for the accident. As such, they are entitled to summary judgment.

### Conclusion

On the basis of the foregoing, the motion for summary judgment filed by the defendants Makita USA and Makita Corporation on May 14, 2002 is GRANTED. Judgment shall be entered in FAVOR of those DEFENDANTS and AGAINST the PLAINTIFF, Anthony S. Burt.